UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL DALE STANDEN,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No.  1:16-cv-1131

HON. PAUL L. MALONEY

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th

Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-six years of age on the date of the ALJ's decision. (PageID.41, 111, 130.) He has a high school education, and was previously employed as a machine feeder and as a dipper. (PageID.100–101, 237.) Plaintiff applied for benefits on March 7, 2013, alleging disability beginning July 5, 2011, due to a fractured back and severe depression. (PageID.111, 130, 203–214.) These applications were denied on September 19, 2013, and Plaintiff subsequently requested a hearing before

an ALJ. (PageID.152–160.) On June 2, 2015, Plaintiff appeared with his counsel before ALJ Davida H. Isaacs for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.52–82.) On August 25, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.41–59.) On August 10, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.32–37.) Thereafter, Plaintiff initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Issacs determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.46.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of history of injury of the thoracic and lumbar spine, obesity, an adjustment disorder with depressed mood, and various anxiety disorder. (PageID.46–47.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.47–48.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he must be permitted to stand for 30 minutes after sitting for 30 minutes without taking him off task. The claimant must be permitted to stand for 30 minutes after sitting for 30 minutes without taking him off task [sic]. The claimant can occasionally climb ramps and stairs. He can occasionally, meaning no more than six times per hour, kneel, stoop, crouch, and crawl. The claimant must avoid hazards such as unprotected heights and moving machinery. He is limited to simple work, with no production rate requirements.

(PageID.48.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.51.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See*

*Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform work in the following representative jobs: order clerk (16,000 national positions), final assembler (30,000 national positions), and table worker / spotter (14,000 national positions). (PageID.101–108.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.52.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 5, 2011, the alleged disability onset date, through August 25, 2015, the date of decision.  (PageID.52–53.)

## DISCUSSION

On November 29, 2016, the Court filed a Notice that directed the filing of briefs in this case.  Among other things, the Court stated that "Plaintiff's initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each *specific* error of fact or law upon which Plaintiff seeks reversal or remand."  (PageID.849) (emphasis added.)  Plaintiff's brief provides only a generic statement of errors, alleging that the Commissioner failed to give appropriate weight to the medical experts, violated agency rules, failed to provide a fair and full hearing, and misapplied the law.  (PageID.857.)  The Court therefore must frame the issues for review.[2]  After examining Plaintiff's brief, the Court gleans the following issue:  The ALJ's decision to assign little weight to Dr. Kevin Smith, D.O., violates the treating physician rule.  (*See* PageID.857–863.)  For reasons expressed below, however, this claim does not merit relief.

On December 2, 2013, Dr. Kevin Smith, D.O., completed a four-page lumbar spine

---

[2] Plaintiff's counsel is cautioned that future briefs failing to provide a Statement of Errors containing specific alleged errors may be stricken.

medical source statement worksheet that addressed Plaintiff's condition. The doctor generally found that Plaintiff had greater restrictions than as ultimately accounted for by the ALJ. (PageID.722–725.) The ALJ afforded less than controlling weight to Dr. Smith's opinions. (PageID.50.) Plaintiff asserts that he is entitled to relief because the ALJ failed to articulate good reasons for doing so.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating physician if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). The parties do not dispute that Dr. Smith qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by

6

the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Dr. Smith assessed Plaintiff's functional abilities in several different areas. Some of the doctor's opinion is consistent with Plaintiff's RFC. For example, the doctor indicated (as the ALJ concluded) that Plaintiff would be required to shift positions between standing and walking every thirty minutes. (PageID.723.) But the doctor also provided restrictions that were greater than the ALJ found were warranted. Among other things, the doctor indicated that Plaintiff could only sit and stand / walk each

7

for a total of two hours in an eight-hour workday. (PageID.723.) Plaintiff would also need to take unscheduled breaks every hour for a period of ten minutes. (PageID.724.) Furthermore, the doctor concluded Plaintiff could only occasionally lift and carry ten pound weights, and only rarely twist, stoop, crouch, and climb ladders. (PageID.724.) The doctor also stated Plaintiff was capable of only low stress work and could be expected to be "off task" for fifteen percent of the workday. (PageID.725.) Finally, were he to work, the doctor stated that Plaintiff could be expected to be absent from that work about three days a month. (PageID.725.)

The ALJ offered several reasons for affording little weight to Dr. Smith's opinion. The ALJ observed that:

> The evidence revealed the claimant's back issues improved after this opinion was provided. Moreover, in April 2015, the claimant reported no physical limitations to Dr. Smith. The clamant said he was intentionally doing as little as possible. The claimant said that he avoided doing things in general (i.e. habitually) (39F:2). Dr. Smith advised the claimant to come back only "as needed" (39F:4). There were no serious physical issues being pursued by Dr. Smith.

(PageID.50.)

The ALJ's assessment is supported by the evidence of record. Plaintiff's alleged disability onset date corresponds to the date he injured his back while working at a construction site. (PageID.370.) Later that month, Plaintiff began physical therapy. (PageID.319.) While he was attending therapy, Plaintiff reported that his lower back pain was "slowly improving" but that he had good and bad days. On August 8, 2011, he told the therapist he recently had to stay in bed and off his feet for a day. (PageID.304.) Plaintiff was discharged from physical therapy on August 23, 2011, and it was noted he did not respond well and that he should discontinue those activities that caused pain. (PageID.302.) Plaintiff received an

MRI on August 16, 2011, that demonstrated compression deformities at Plaintiff's T12 and L3 vertebra. (PageID.300.) Despite these treatment notes during the month following Plaintiff's injury and onset date, Plaintiff was able to return to clerical work only a week after his injury and performed that work through November 8, 2011.[3] (PageID.828.) Thereafter, Plaintiff continued to complain of his back pain to his care providers. At these visits, Plaintiff rated his pain between 2 and 7, but for the most part the objective record contains little by way of objective support for these complaints. A physical examination with Dr. Daniel Burrus on November 2, 2011, for example, revealed "reasonably good" motion. The doctor also noted that radiographic scans indicated Plaintiff's compression fractures had healed reasonably well, and the doctor recommended physical therapy. The doctor thought that Plaintiff could control his pain with Advil, Aleve, or Tylenol. (PageID.391.) Plaintiff also saw Dr. Mark Adams on referral from Dr. Smith on May 10, 2012. (PageID.445.) At that visit, Plaintiff stated he had pain from his mid to low back that would radiate into his hips and right leg. He also complained of numbness and tingling in his right leg and foot. (PageID.446.) Plaintiff further reported physical therapy did not help. (PageID.446.) But a physical examination revealed no facet tenderness and a full range of motion of both the cervical spine and the lumbar spine with no pain on extension, flexion, or right or left lateral rotation. A straight leg raise test was also negative. (PageID.448.) Plaintiff could heel and toe walk. (PageID.448.)

Plaintiff underwent an MRI of his thoracic spine on May 19, 2012. Dr. Adams found slight bulging that produced a minimal impression on the cord without evidence of central canal stensosis or other frank cervical spine abnormality. (PageID.436.) Dr. Adams also reviewed an MRI of Plaintiff's lumbar

---

[3] At later evaluations, Plaintiff reported he had lost this job not because he was unable to perform the duties involved, but because the project he had been working on ended. (PageID.683, 841.)

spine taken the same date that found chronic changes involving the L3 and T12 vertebrae. There was a minor bulging disc noted, but significant central canal stenosis was not clearly demonstrated. (PageID.438.)

Plaintiff was seen for a follow up with Dr. Adams on July 12, 2012. (PageID.452.) A physical examination was similar to the May 10, 2012, examination. Plaintiff had a full range of motion of both cervical and lumbar spines with no pain upon exertion, flexion, or rotation. Plaintiff had a negative straight leg raise test. (PageID.452.) Plaintiff indicated he wanted to try conservative therapy before considered surgery, and Dr. Adams referred Plaintiff to a pain clinic to receive injections.

On July 9, 2013, Plaintiff underwent a consultative examination with Dr. Grant. (PageID.836.) Dr. Hyatt reviewed Plaintiff's records and performed his own examination. He concluded that "there is no support for maintenance of restrictions. In fact, in light of the patient's back complaints and obesity, an increase in his level of physical activities would be indicated." (PageID.846.) The doctor did find it reasonable to check into Plaintiff's lower extremity complaints to see if there was a nerve root irritation or compression that could be secondary to a new condition. (PageID.846.) The doctor further found no indication for surgical intervention on Plaintiff's thoracic spine. (PageID.846.)

Plaintiff's visits with Dr. Smith also fail to support the doctor's extreme limitations. At many of these visits, the doctor stated that Plaintiff's musculoskeletal system was normal and Plaintiff reported his medication was making his pain tolerable. (PageID.470, 613, 662, 668, 713.) Though at other times the doctor found that Plaintiff had a positive straight leg raise test. (PageID. 471, 665, 671, 745.) Plaintiff appears to fault the ALJ for treating as a negative consideration, his remark to Dr. Smith that he intentionally avoided performing activities. Plaintiff contends Dr. Smith only found he had no physical

disability in that note *because* he avoided doing any activities. (PageID.862.) Perhaps. But cutting against this interpretation is the very next line, which states that Plaintiff's "activities of daily living were normal." (PageID.722.) Moreover, focusing on this area of Dr. Smith's treatment notes is a double-edged sword for Plaintiff because a great many of the doctor's other notes indicate that Plaintiff had no physical disability and his activities of daily living were normal without any mention of Plaintiff intentionally limiting his activities. (*See, e.g.*, PageID.747.)

In sum, after a review of the entire record, the Court concludes the ALJ's observation that Plaintiff's back pain continued to improve is well supported by the evidence described above. While the Court does not doubt that Plaintiff is limited due to his impairments, such impairments were properly accounted for in the ALJ's RFC determination. Accordingly the Court finds the ALJ provided good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Smith's opinion.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated:  July 28, 2017                             /s/ Paul L. Maloney
                                                  PAUL L. MALONEY
                                                  United States District Judge